IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WILLIAMS ROBYERY GUIX-MENDEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:25-cv-1798 (LMB/IDD) |
| ) | |
| JEFFREY CRAWFORD, *Warden, Farmville* ) | |
| *Detention Center*, et al., ) | |
| ) | |
| Respondents. | |

ORDER

Petitioner Williams Robyery Guix-Mendez ("Guix-Mendez"), an alleged native and citizen of Guatemala, has filed a four-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he was illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") on September 7, 2025. Specifically, he alleges that his characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(2), violates the Immigration and Nationality Act ("INA") (Count I), his due process rights (Counts II and III), and the Administrative Procedures Act ("APA") (Count IV).

Guix-Mendez is currently detained at the Farmville Detention Center, which is within this Court's jurisdiction and the basis upon which he is suing Jeffrey Crawford, the warden of the Farmville Detention Center. Guix-Mendez has also sued Kristi Noem, the DHS Secretary; Todd Lyons, the Acting Director of ICE; Joseph Simon, ICE Washington Field Office's Enforcement and Removal Operations Director; and Pamela Jo Bondi, the Attorney General ("federal respondents"). For the reasons discussed in this Order, the Court finds that Guix-Mendez is detained pursuant to 8 U.S.C. § 1226(a). Accordingly, his Petition will be granted on due

process grounds and the federal respondents will be ordered to release him from custody and provide him with a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a).[1]

I.

Guix-Mendez has resided in the United States for six years, and lives in Washington, D.C. with his mother and minor U.S. citizen siblings. [Dkt. No. 1] at ¶ 1, 26. He was born on April 30, 2005, in Guatemala, and entered the United States without a parent or guardian on October 16, 2019, when he was 14 years old. Id. at ¶ 22. DHS designated Guix-Mendez an Unaccompanied Child ("UAC") and transferred him to the custody of the Office of Refugee Resettlement until he was released to his mother's custody. [Dkt. No. 1-2]. DHS issued him a Notice to Appear ("NTA") before an immigration judge, charging him with being an alien present in the United States without being admitted or paroled under 8 U.S.C. §1182(a)(6)(A)(i). [Dkt. No. 1-3].

In 2021, the D.C. Superior Court awarded custody of Guix-Mendez to his mother upon finding that his father had neglected and abandoned him and that it was not in his best interest to return to Guatemala. [Dkt. No. 11-1]. Thereafter, Guix-Mendez filed an I-360 Petition for Special Immigrant Juvenile Status ("SIJ status"), which DHS approved on July 29, 2022. DHS also granted Guix-Mendez a four-year renewable grant of deferred action on his NTA. [Dkt. No. 1-4]. Four months later, on the joint motion of DHS and Guix-Mendez, an immigration judge terminated Guix-Mendez's removal proceedings due to his SIJ status. [Dkt. No. 1-7]. Guix-Mendez, who has no criminal record and has been lawfully employed in construction, will be

---

[1] Because the Court is granting relief on due process grounds, it need not address Guix-Mendez's arguments based on the INA or the APA.

eligible to adjust to a legal permanent resident once his priority date[2] is current and there is an available visa. [Dkt. No. 1] at ¶ 24.

On September 7, 2025, while walking to his girlfriend's apartment in Washington D.C., ICE agents and/or other federal agents acting on ICE's behalf arrested Guix-Mendez on a public street without a warrant. Id. at ¶ 27. Guix-Mendez told the agents that he had SIJ status. Id. The officers took him to the ICE Enforcement and Removal Operations Washington Field Office in Chantilly, Virginia, where they served him with a new NTA, charging him with being inadmissible to the United States—and therefore subject to removal—pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). [Dkt. No. 1-5] at 4.

Guix-Mendez sought bond but on September 22, 2025, he was denied the opportunity to have a bond hearing because the immigration judge determined that she lacked jurisdiction to conduct a bond hearing due to DHS and DOJ policies that all persons who entered the United States without inspection are deemed "applicants for admission" to the United States, and are ineligible for a bond determination under 8 U.S.C. § 1225. [Dkt. No. 1-6] at 1.

On September 23, 2025, Guix-Mendez received a Notice of Intent to Revoke his employment authorization document because U.S. Citizenship and Immigration Services ("USCIS") had "terminated his deferred action on 9/15/2025." [Dkt. No. 1-8]. This was the first time that Guix-Mendez or his counsel learned that USCIS had terminated his deferred action status and, as of the date the Petition was filed, they still had not received a notice of such termination or the reason for it.

---

[2] Guix-Mendez's "priority date" refers to the filing date of his SIJS petition, which was October 14, 2021. [Dkt. No. 13-1] at ¶ 13.

3

On September 29, 2025, Guix-Mendez filed a motion to terminate his removal proceedings based on his SIJ status. [Dkt. No. 13-1] at 5. The immigration judge denied his motion on October 15, 2025, on the basis that he is not eligible to adjust his status to a lawful permanent resident because there is no visa currently available for him to do so.

Guix-Mendez filed his Petition for Writ of Habeas Corpus on October 17, 2025. [Dkt. No. 1]. This Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission." [Dkt. No. 8]. On October 24, 2025, Guix-Mendez filed a Proposed Release Plan, which shows a fixed home address in Washington, D.C., where he will reside if released. [Dkt. Nos. 11, 15]. Included in Guix-Mendez's Proposed Release Plan is an affidavit from his mother, who stated, "I want Robyery to come home to live with me. He will always have a home with me." Id. The federal respondents have filed an opposition. [Dkt. No. 13]. Finding that oral argument will not aid the decisional process, the Petition will be resolved on the papers submitted.

II.

The central question posed in Guix-Mendez's Petition is whether he is subject to mandatory detention under § 1225(b)(2) or instead subject to discretionary detention and entitled to a bond hearing under § 1226(a). The federal respondents contend that his detention is governed by § 1225(b)(2). They maintain that whether an individual is detained under § 1225(b) or § 1226(a) lies in the "distinction between aliens who are detained after a lawful admission into the U.S. and those who are present without a lawful admission." [Dkt. No. 13] at 7. According to the federal respondents, anyone in the United States who has not been admitted is subject to mandatory detention under § 1225(b), and § 1226(a)'s discretionary detention provisions apply to "other classes of aliens . . . besides 'applicants for admission.'" Id. at 13-14 & n.7. Therefore,

4

they argue that because Guix-Mendez has not been admitted into the United States, he is inadmissible under 8 U.S.C. § 1182(a), considered to be an applicant for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2). Id. at 16.

This argument reflects DHS's novel interpretation of decades-old immigration detention statutes which, as several district courts throughout the country have found,[3] is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until very recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction. See Romero v. Hyde, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025). This new approach will also subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have an extremely limited (if any) application." Lopez Benitez v. Francis, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025).

This Court has previously addressed several of these points in Hasan v. Crawford, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025), and maintains and incorporates that reasoning into this Order. That same reasoning has been applied in multiple cases since this Court issued its

---

[3] See, e.g., Gomes v. Hyde, 2025 WL 1869299 (D. Mass. July 7, 2025); Martinez v. Hyde, 2025 WL 2084238 (D. Mass. July 24, 2025); Lopez Benitez v. Francis, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); Maldonado v. Olson, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Arrazola-Gonzalez v. Noem, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); J.O.E. v. Bondi, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); Jacinto v. Trump, 2025 WL 2402271 (D. Neb. Aug. 19, 2025); Samb v. Joyce, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); Dos Santos v. Noem, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); Garcia Jimenez v. Kramer, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); Anicasio v. Kramer, 2025 WL 2374224 (D. Neb. Aug. 14, 2025); Rosado v. Figueroa, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); Orellana Juarez v. Moniz, 2025 WL 1698600 (D. Mass. June 11, 2025); Hernandez Nieves v. Kaiser, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); Vasquez Garcia v. Noem, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Carmona-Lorenzo v. Trump, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); Lopez-Campos v. Raycroft, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Kostak v. Trump, 2025 WL 2472136 (W.D. La. Aug. 27, 2025).

memorandum opinion in Hasan, and where this Court has required that a petitioner be provided with a standard bond hearing pursuant to § 1226, the petitioner has been granted bond. Vargas Nunez v. Lyons et al., 1:25-cv-1574-LMB-WEF, Dkt. No. 12 (E.D. Va. Oct. 15, 2025) (released on his own recognizance); Diaz Gonzalez v. Lyons et al., 1:25-cv-1583-LMB-IDD, Dkt. No. 10 (E.D. Va. Oct. 15, 2025) (released on his own recognizance); Gomez Alonzo v. Simon et al., 1:25-cv-1587-LMB-LRV, Dkt. No. 20 (E.D. Va. Oct. 9, 2025) (released under bond of $1,500); Perez Bibiano v. Lyons et al., 1:25-cv-1590-LMB-WEF, Dkt. No. 10 (E.D. Va. Oct. 14, 2025) (released on his own recognizance); Guerra Guix-Mendez v. Noem et al., 1:25-cv-1634-LMB-WEF, Dkt. No. 14 (E.D. Va. Oct. 22, 2025) (released on his own recognizance); see also Chaudhari v. Crawford, et al., 1:25-cv-1772-LMB-IDD, Dkt. No. 12 (E.D. Va. Oct. 23, 2025) (released under bond set on June 24, 2019). Moreover, DHS has chosen not to appeal the immigration judges' bond decisions.

Because Guix-Mendez has been present in the United States since 2019, and because § 1226(a) sets forth "the default rule" for detaining and removing aliens "already present in the United States," Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), Guix-Mendez's detention is governed by § 1226(a). And under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before an immigration judge, in which the immigration judge must determine whether he poses a danger to the community, and whether he is a flight risk. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). Unless the immigration judge makes such a determination, Guix-Mendez's continued detention is unlawful.

This Court's memorandum opinion in Rodriguez v. Perry, 747 F. Supp. 3d 911 (E.D. Va. 2024) is consistent with and reinforces this finding. In Rodriguez, an alien who was initially removable as an "arriving alien" when he arrived as an UAC at the Hidalgo, Texas Port of Entry

6

in 2013, was an "alien present in the United States" when he was arrested 10 years later in Fredericksburg, Virginia because of his SIJ status. Id. at 916. The Court found that Rodriguez's SIJ status, which put him "a hair's breadth from being able to adjust [to LPR] status," accorded Rodriguez significant benefits and procedural protections that entitled him to a prompt, individualized bond hearing under § 1226(a). Id. (quoting Osorio-Martinez v. Attorney Gen. United States of Am., 893 F.3d 153, 170 (3d Cir. 2018)).[4] Similarly, Guix-Mendez's SIJ status, which he has today, requires that he be afforded a bond hearing under § 1226(a).

III.

For all the reasons stated above, Guix-Mendez's Petition [Dkt. No. 1] is GRANTED, and it is hereby

ORDERED that Guix-Mendez be promptly released from custody, with all his personal property, pending his bond hearing before an immigration judge. Guix-Mendez must live at the fixed address identified in his Proposed Release Plan and appear at the bond hearing once the government notifies him of its date, time, and location; and it is further

ORDERED that respondents provide Guix-Mendez with a standard bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within 14 days of the date of this Order; and it is further

ORDERED that the federal respondents be and are ENJOINED from denying bond to Guix-Mendez on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2); and it is further

---

[4] Importantly, "SIJ status, once granted, may not be revoked except 'on notice,' 8 C.F.R. § 205.2, and upon the Government's compliance with a series of procedural safeguards. . . ." Rodriguez, 747 F. Supp. 3d at 918 (quoting Osorio-Martinez, 893 F.3d at 163-64). And "although [someone] with SIJ status can be removed on certain grounds, such as having been convicted of a serious criminal offense, he cannot be removed for having entered the country illegally." Id. (citing 8 U.S.C. § 1227(c)).

7

ORDERED that, if Guix-Mendez is granted bond, the federal respondents be and are ENJOINED from invoking the automatic stay provision in 8 C.F.R. § 1003.19(i)(2);[5] and it is further

ORDERED that the federal respondents file a status report with this Court within three days of the bond hearing, stating whether Guix-Mendez has been granted bond, and, if his request for bond was denied, the reasons for that denial.

The Clerk is directed to enter judgment in Guix-Mendez's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, cancel the hearing scheduled for October 31, 2025, and close this civil action.

Entered this 29th day of October, 2025.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
**United States District Judge**

---

[5] This Court has previously found that "the automatic stay imposed in immigration cases constitutes an unequivocal violation of due process." Hasan, 2025 WL 2682255, at *13.